[Civ. No. 16924. First Dist., Div. One. Oct. 29, 1956.]

JAMES M. DOBBINS, Plaintiff, v. LILLIAN R. DANDINI, Defendant and Appellant; REMILLARD BRICK COMPANY (a Corporation), Intervener and Appellant; W. C. THOMPSON et al., Respondents.

Johnson & Harmon for Appellants.

Carr, McClellan, Ingersoll & Thompson for Respondents.

AGEE, J. pro tem.*—Appellant Lillian R. Dandini is the sole stockholder of appellant Remillard Brick Company, a

*Assigned by Chairman of Judicial Council.

corporation, and the two are treated as one in this litigation. Respondent W. C. Thompson and his wife are the sole stockholders of respondent Concrete Materials Company, a corporation, and are likewise treated herein as one. The judgment appealed from is based upon findings and conclusions that appellants owe respondent Thompson $9,615 for certain paving, sewer and electrical work and that respondents owe appellants $4,528.72 for gravel wrongfully removed by respondents from property owned by appellant Remillard Brick Company, leaving a balance of $5,086.28 owing from appellants to respondent Thompson. The sole ground of appeal is that the offset allowed was not enough.

By written lease, Remillard Brick Company leased to Concrete Materials Company some 160 acres of land near Pleasanton for the purpose of removing gravel. The rental was based upon the amount of gravel removed, with a minimum rental of $300 a month.

Between the land leased and the county road running between Pleasanton and Livermore was a strip of land owned by Remillard Brick Company which was not included in the lease. Without permission or right, respondents removed or caused to be removed from this strip a quantity of gravel. The amount so removed is the sole question in dispute, both sides agreeing that the valuation of 25 cents per ton is fair.

The gravel was removed from two excavations, referred to as the East Pit and the West Pit. The West Pit was an excavation dug by Thompson. One end of it extended into the unleased strip. The East Pit was dug by one Armstrong and was entirely on the unleased strip. Armstrong removed gravel only from the East Pit, under an agreement with Thompson to pay him for it according to the tonnage removed. Armstrong testified that he removed approximately 18,000 tons from the East Pit. Two invoices from Thompson to Armstrong for 7,514.5 tons and 10,599.4 tons, respectively, were admitted in evidence and Armstrong testified that these covered all of the gravel removed by him from the unleased property. It was on this basis that the trial court, computing the offset at 25 cents per ton, reached the figure of $4,528.72, a mathematical error of 24 cents.

Armstrong was also questioned about two other invoices for 775.95 tons and 274.80 tons, respectively, but he stated that the gravel covered by these invoices was not taken from the unleased property. As against this, appellants produced a civil engineer who made certain calculations from the size

of the two excavations and concluded that a much larger quantity of gravel must have been removed than that acknowledged by Armstrong and Thompson. However, this merely presented a question of fact to be determined by the trial judge, who quite evidently believed Thompson and Armstrong as to the amount removed by them from the East Pit.

It must be kept in mind that appellants had the burden of proving their offset and that their case depended largely upon the testimony of the civil engineer, of whom the trial judge said: ''I frankly can't give that young man's· testimony much weight, because he was so indefinite.''

Armstrong did not remove any gravel from the West Pit but it appears that Thompson did. However, the trial court made no allowance to appellants for this. Respondents assert that this was proper because any claim that appellants had was settled and satisfied by the deeding of a piece of land in Hillsborough to appellants. Respondent Thompson testified as follows: ''I wasn't positive, but what my foreman might have encroached on her line a little but [bit], taken a little bit out of there, but I didn't go to the expense of having a survey made.'' Accordingly, he stated that he told appellant Dandini: '' 'Well, if you think for a minute that I have taken any gravel out of there, or I owe anything, I will be glad to donate this piece of property to you, in payment for anything you think I might have, might have taken,' because, I said, 'the property runs along Remillard Drive and is too small for a lot and too shallow.' '' He testified further: ''I gave it to her, and she accepted it, and I thought that was the end of it, and it was for quite a time afterwards.'' The property deeded was approximately 100 feet in length and adjoined other property owned by appellants. There was no testimony as to its value. Appellant Dandini did not deny that respondent Thompson made the offer of settlement and she admitted that she accepted the deed. Her version is somewhat equivocal, as will appear from the following: ''Mr. KLEEFISCH [counsel for respondents]: Isn't it a fact that Mr. Thompson, at about that time, had a conversation with you, and stated to you that, because you had some idea that he had taken some of your gravel, if you wouldn't consider accepting that piece of property and calling it quits between you? THE WITNESS: Well, I never agreed to it. He might have offered it, but I never agreed to it. . . . Q. You recorded the deed? A. Because I really didn't care.'' Under this state of the record, the trial court was justified in concluding that

any claim as to the West Pit was settled and satisfied by the execution, delivery and acceptance of the deed.

The judgment is affirmed.

Peters, P. J., and Bray, J., concurred.